Curt A. Claus and Florence B. Claus v. Commissioner.
Claus v. Commissioner
Docket No. 60223.
United States Tax Court
T.C. Memo 1958-64; 1958 Tax Ct. Memo LEXIS 166; 17 T.C.M. (CCH) 313; T.C.M. (RIA) 58064; April 18, 1958
*166 Harvey W. Peters, Esq., 1308 North Prospect Street, Milwaukee, Wis., and Dudley J. Godfrey, Jr., Esq., for the petitioners. John E. Owens, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The respondent determined a deficiency in income tax for 1953 in the amount of $1,755.15. The sole issue is whether payments received by Curt A. Claus were taxable as ordinary income or as capital gain from the sale of an interest in patents issued to Walter E. Claus, his brother. The joint return of the petitioners was filed with the director of internal revenue for the District of Wisconsin, at Milwaukee, Wisconsin. Findings of Fact All stipulated facts are incorporated herein by this reference. Prior to 1944 Walter E. Claus, a brother of Curt A. Claus, was in the real estate business and also engaged in manufacturing. In late 1943 or early 1944 Walter designed a small motorized rotary soil tiller for use in breaking up soil for gardens or seed beds. In developing this machine he was assisted by Curt with money, time, and effort. Walter filed an application for a patent on November 29, 1944, and Patent No. 2,491,892 was issued to *167 Walter on December 20, 1949. An improvement designed by Walter was the subject of a patent application filed August 9, 1945, and granted July 3, 1951, as Patent No. 2,558,882. In July 1944, Walter showed a working model of his rotary tiller to Harvey F. Ludwig. With the intention of manufacturing and marketing this machine Walter, Curt, and Ludwig formed a corporation, Milwaukee Equipment Manufacturing Company, incorporated under the laws of Wisconsin, October 27, 1944, hereinafter referred to as the Company. The original issued stock was held by Walter, Curt, and Ludwig in practically equal proportions. These three men were the directors, Walter was president, Ludwig, vice president, and Curt was secretary. In 1944 Walter orally agreed with Curt that for Curt's assistance with the development of the rotary tiller, he should have 20 per cent of whatever income was derived. As of December 29, 1944, Walter, referred to as Claus, and the Company entered into an agreement providing in part: "NOW, THEREFORE, the parties hereto agree as follows: "1. CLAUS hereby grants COMPANY an exclusive license, together with the right to grant sublicenses, to make, have made, use and sell throughout *168 the world rotary soil tillers embodying said invention under said application and all Letters Patent now or hereafter, within the life of this agreement, owned, controlled, or subject to licensing by CLAUS of any subject matter of the aforesaid application, or any improvement thereon. "2. COMPANY covenants and agrees to pay CLAUS a royalty predicated upon its gross sales of any and all soil tillers coming within the scope of said application and the Letters Patent expected to issue thereon and subject to this agreement on the following basis: "Two and one-half percent (2 1/2%) of the gross sales price of any and all soil tillers and replacement and repair parts therefor sold by COMPANY and/or any sub-licensees under the license here granted. * * *
"7. In the event the total royalties received by CLAUS for any quarterly period during the life of this agreement shall be less than Five Hundred Dollars ($500.00), then in that event, CLAUS shall have the right to terminate this agreement upon giving the COMPANY thirty (30) days' notice of his intention so to do, provided, however, that if COMPANY within said thirty (30) days after receipt of said notice cures such default, said *169 notice shall be void and without effect in terminating this agreement and the same shall continue in full force and effect as if no notice had been given and no default had occurred. "8. The parties warrant and agree that in the event of bankruptcy, voluntary or involuntary, of COMPANY the license herein granted shall not be treated as part of the bankrupt estate, but on the contrary, shall ipso facto cease and be determined and shall be deemed to have expired prior to the bankruptcy." In March 1948 Walter and Curt executed a written agreement providing, in part: "WHEREAS, C. A. Claus has contended that he did aid and assist Walter E. Claus in the conception and reduction to practice of said invention and that said C. A. Claus is entitled to an interest in the aforementioned invention and the exclusive license agreement and the payments heretofore made, and to be made, under said exclusive license agreement by Milwaukee Equipment Mfg. Co.; and "WHEREAS, Walter E. Claus has agreed to assign to C. A. Claus a twenty per cent (20%) interest in and to the exclusive license agreement and the payments made and to be made thereunder from and after the execution thereof; "NOW, THEREFORE, *170 IT IS MUTUALLY AGREED AS FOLLOWS: "1.) Walter E. Claus does hereby assign to C. A. Claus a twenty per cent (20%) interest in and to the exclusive license agreement, executed December 29, 1944, by and between Milwaukee Equipment Mfg. Co., a Wisconsin corporation, and Walter E. Claus in consideration of C. A. Claus forever waiving any right, title or interest he may have or claim to have in the invention of rotary soil tillers, or any improvements thereof, that is the subject matter of said exclusive license agreement. * * *
"4.) This assignment shall have full force and effect as to said twenty per cent (20%) interest in and to the exclusive license agreement as if C. A. Claus had been an original party to said exclusive license agreement as a 20% owner of the invention." Additional common stock was issued to the three incorporators in substantially equal amounts for cash or loans. In 1948 a stock dividend of 6 per cent cumulative preferred stock was issued. This was called in and replaced with 5 per cent cumulative preferred stock in 1950. Additional preferred stock was issued to Walter and Curt in payment of cash loans. During the years 1945 through 1952 the Company paid *171 equal salaries to Walter, Curt, and Ludwig. In 1949 the sales of the Company fell off and Walter did not withdraw the full amount of royalties accrued to him on the books. Walter and Curt agreed to forgive payment of all amounts due from the Company at the end of 1950, because payment would leave the Company short of working capital. At the end of 1952 Walter desired to withdraw from business for the sake of his health. On January 24, 1953, Walter, Curt, and Ludwig agreed to sell to Food Machinery and Chemical Corporation, herein referred to as the buyer, all their stock in the Company and the real estate and buildings used in the Company's business, and to grant to the buyer a non-exclusive license covering the patents involved. Walter and Curt and the Company thereafter agreed in writing that upon the granting of a license to the buyer the license agreement of 1944 would be terminated and the assignment of 1948 of a 20 per cent interest to Curt would be cancelled. Also, Walter, as an inducement to Curt and Ludwig to agree to the sale of the business, agreed in writing to assign to each Curt and Ludwig a one-third interest in his patents, patent rights, and applications and *172 certain contemplated applications for patents. The transfer of the stock and property and patent licenses was carried out in February 1953. Curt received royalties from the Company in 1953 in the amount of $12,340.66. Opinion The respondent determined that the royalties received by Curt in 1953 from the Company were taxable as ordinary income since they represented compensation from Walter for Curt's services in developing the invention. Curt assisted in 1943 and 1944 with money, time, and effort in the invention and Walter promised him a share in the income to be derived if the product was marketed on a profitable basis. [1] Walter kept the promise by making Curt a written assignment of a 20 per cent interest in and to the exclusive license agreement. Under their agreement Curt paid 20 per cent of all costs involved in developing and patenting the invention. The petitioners contend that Curt acquired a 20 per cent equitable in crest in the invention and that the royalties he received are capital gain from the sale of the invention. *173 The petitioners rely on Carl G. Dreymann, 11 T.C. 153 (1948). In that case taxpayer orally agreed with his daughter that in return for her services to be given in developing a process for moisture proofing paper and paper board, he would give her an undivided half interest in any process developed. She performed services and a process was developed. We held that she thereby acquired an equitable half interest in the process upon its creation and was entitled to half the proceeds when it was marketed. The agreement here was reduced to writing in 1948 and made retroactive to the date of the original license given by Walter to the Company as of December 29, 1944. It does not purport to convey an interest in the invention; in fact, under it Curt expressly waives any right or title in the invention which he is said to have claimed. It conveys a 20 per cent interest in and to the exclusive license agreement with the Company. Curt did not have an undivided interest in the patents here involved, but only an assignment of a right to income. The proceeds received by Curt in 1953 were, therefore, taxable to him as ordinary income and not as capital gain. See Herman Shumlin, 16 T.C. 407 (1951). *174 Decision will be entered for the respondent. Footnotes
1. Walter testified: In view of his [Curt's] assistants [assistant] and monetary help in expensing the cost, I agreed verbally with him that I would give him a 20 per cent of everything I got in the way of royalties out of this product. Curt testified: Well, at the time when my brother Walter made known to me the idea that he had with regard to developing a rotary tiller, he asked my help, and I furnished, that help in the way of time, effort, expenditures, and my ability to help him. Q. And what did he give you then? A. Well, he gave nothing, he gave me nothing for that, except that we had a verbal agreement that if and when this product was manufactured on a profitable basis, that I would receive an interest in whatever income he would receive from it.↩